UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JUAN CARLOS FLETES-VELASQUEZ,

Petitioner,

v.

JULIO HERNANDEZ; BRUCE SCOTT;
MARKWAYNE MULLIN; UNITED
STATES DEPARTMENT OF
HOMELAND SECURITY; TODD
BLANCHE,

Respondents.

C26-1908 TSZ

ORDER

THIS MATTER comes before the Court on a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, docket no. 1.  Having reviewed all papers filed in support of, and in opposition to, the habeas petition, the Court enters the following Order.

**Background**

Petitioner Juan Carlos Fletes-Velasquez is a citizen of the Republic of Honduras who entered the United States in May 2012 as an unaccompanied minor.  Pet. at ¶ 15 (docket no. 1); Hubbard Decl.[1] at ¶¶ 3–4, Ex. C to Andrade Decl. (docket no. 6-3 at 13).

---

[1] The declaration of Deportation Officer Christopher Hubbard was included in the Notice of Evidence provided by the United States Department of Homeland Security ("DHS") to the immigration judge prior to a bond hearing conducted on April 6, 2026.  *See* Ex. C to Andrade Decl. (docket no. 6-3); *see also* Ex. D to Pet. (docket no. 1-5).  The version of the declaration given to the immigration judge and submitted to the Court in this habeas matter is not signed. A digitally-signed version of the same declaration was, however, filed in response to petitioner's

ORDER - 1

In May 2019 and in January 2023, petitioner was arrested, but he was not convicted of any offense. Pet. at ¶ 24 (docket no. 1). With regard to the May 2019 arrest, the matter was dismissed because the prosecutor did not file charges within the 72-hour limit for doing so. _See_ Ex. B to Pet. (docket no. 1-3 at 46). The January 2023 arrest resulted in a charge of misdemeanor assault (domestic violence), but the case was dismissed in April 2024, after petitioner complied with all deferred prosecution requirements. _See id._ (docket no. 1-3 at 45); Pet. at ¶ 24 (docket no. 1); _see also_ Ex. C to Andrade Decl. (docket no. 6-3 at 5); Hubbard Decl. at ¶ 8 (docket no. 6-3 at 13); Ex. D to Andrade Decl. (docket no. 6-4 at 6).

In July 2025, petitioner was detained pursuant to a Form I-200 administrative warrant while working at the Wingstop restaurant in Shoreline, Washington. Ex. C to Andrade Decl. (docket no. 6-3 at 5). Since then, petitioner has been in custody at the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC"). On October 8, 2025, an immigration judge denied petitioner's applications for asylum and withholding of removal and ordered him removed to Honduras. _Id._ (docket no. 6-3 at 8–11). Petitioner timely sought review of this decision by the Board of Immigration Appeals ("BIA"), and the removal order is not administratively final. Hubbard Decl. at ¶ 11 (docket no. 6-3 at 13).

---

previous habeas petition, as a result of which he was given a bond hearing. _See_ Hubbard Decl. (docket no. 8 in Case No. C26-509 RAJ); _see also_ _Fletes Velasquez v. Scott_, No. 26-cv-509, 2026 WL 820822 (W.D. Wash. Mar. 25, 2026). The Court will therefore treat the declaration as properly executed under penalty of perjury.

ORDER - 2

In February 2026, petitioner filed a pro se petition for habeas relief, which was granted in late March 2026.  *Fletes Velasquez*, 2026 WL 820822, at *2.  In the earlier habeas matter, the Court ordered that petitioner be provided with "a constitutionally adequate bond hearing" or released "under an appropriate order of supervision" within fourteen days.  *Id.*  On April 6, 2026, a bond hearing was conducted.  *See* Pet. at ¶ 27 (docket no. 1).  No official transcript or recording of the hearing has been provided.  Petitioner has, however, submitted the notes of the attorney who represented him at the bond hearing.  *See* Ex. C to Pet. (docket no. 1-4).  In response to the habeas petition, federal respondents have filed the immigration judge's check-box form of order, *see* Ex. E to Andrade Decl. (docket no. 6-5), and an explanatory memorandum dated May 14, 2026, *see* Ex. D to Andrade Decl. (docket no. 6-4).  The immigration judge denied bond on the sole ground that petitioner "failed to show he is not a Flight Risk."  Ex. E to Andrade Decl. (docket no. 6-5 at 2).  Petitioner contends that the immigration judge abused his discretion in deeming petitioner a flight risk, and petitioner seeks immediate release from the NWIPC.

**Discussion**

**A.      Prudential Exhaustion**

The Court has authority to grant a writ of habeas corpus to an individual who is in custody "in violation of the Constitution or law or treaties of the United States."  *See* 28 U.S.C. § 2241(c)(3).  In answering the pending habeas petition, federal respondents have asked the Court not to exercise its habeas authority because petitioner has not exhausted an administrative remedy; with respect to the denial of conditional release on

ORDER - 3

bond, petitioner has not appealed to the BIA. The Court concludes that exhaustion is not required.

In the immigration habeas context, administrative exhaustion is prudential, not jurisdictional. *See W.T.M. v. Bondi*, No. 25-cv-2428, 2026 WL 262583, at *2 (W.D. Wash. Jan. 30, 2026). Under the factors outlined in *Puga v. Chertoff*, 488 F.3d 812 (9th Cir. 2007),[2] prudential exhaustion is not necessary when a habeas petitioner raises a constitutional challenge to the adequacy of a bond hearing, which is a claim well-suited for federal court review. *See Garcia Miranda v. Hernandez*, No. 26-cv-906, 2026 WL 1328227, at *2 (W.D. Wash. May 13, 2026). Moreover, when a habeas petitioner contends that a bond hearing did not comply with the Court's prior order requiring such hearing, prudential exhaustion is excused. *See Zhenwei Lu v. Divver*, No. 26-cv-781, 2026 WL 1755174, at *3–4 (S.D. Cal. June 2, 2026) (joining "the many other courts that have excused prudential exhaustion . . . for purposes of reviewing compliance with the Court's prior order for a bond hearing"); *Sanchez Henao v. Hernandez*, No. 26-cv-707, 2026 WL 1492714, at *2 (W.D. Wash. May 28, 2026) ("a hearing conducted pursuant to a district court's order requiring the government to be held to a certain legal standard is reviewable for compliance with the court's order" (citing *Martinez v. Clark*, 124 F.4th

---

[2] In *Puga*, the Ninth Circuit applied, in the immigration habeas context, the following standard for determining whether to require prudential exhaustion: "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." 488 F.3d at 815 (citations omitted).

ORDER - 4

775, 784 (9th Cir. 2024))); *see also* *Lopez v. Paulk*, --- F. Supp. 3d ---, 2026 WL 961948, at *3–4 (M.D. Ga. Apr. 6, 2026).  Finally, the Court may waive prudential exhaustion if (i) the administrative remedies are "inadequate or not efficacious," (ii) "pursuit of administrative remedies would be a futile gesture," (iii) "irreparable injury" might result, or (iv) "the administrative proceedings would be void."  *See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).  In this matter, because petitioner challenges the constitutional adequacy of a bond hearing ordered by the Court, prudential exhaustion does not apply or is excused or waived.

**B.     Flight Risk**

The statute pursuant to which petitioner is held, § 236(a) of the Immigration and Nationality Act ("INA"), provides no guidance concerning how immigration judges should make discretionary bond determinations.  *See* 8 U.S.C. § 1226(a).[3]  The BIA filled this gap by adopting a standard set forth in a regulation intended for a different situation.  *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021) (citing *In re Adeniji*, 22 I. & N. Dec. 1102 (BIA 1999)).  The regulation provides that an "officer authorized to

---

[3] INA § 236(a) provides:  "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.  Except as provided in subsection (c) and pending such decision, the Attorney General-- (1) may continue to detain the arrested alien; and (2) may release the alien on-- (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or (B) conditional parole; but (3) may not provide the alien with work authorization . . . unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization."  8 U.S.C. § 1226(a).

ORDER - 5

issue a warrant of arrest may, in the officer's discretion, release an alien . . . provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."  8 C.F.R. § 236.1(c)(8).  In this matter, in denying conditional release on bond, the immigration judge relied solely on a finding that petitioner failed to disprove[4]

---

[4] The appellate courts are split concerning whether, in a bond hearing before an immigration judge, the burden of proof must be borne by the noncitizen or DHS.  *See Cruz-Acevedo v. Scott*, No. 26-cv-1654, 2026 WL 1623154, at *6–7 (W.D. Wash. June 5, 2026).  The First and Second Circuits and at least one district court have held that placing the burden on noncitizens to demonstrate they are not a flight risk or a danger to the community violates the Due Process Clause of the Fifth Amendment.  *See Hernandez-Lara*, 10 F.4th at 39 ("We therefore conclude that the government must bear the burden of proving dangerousness or flight risk in order to continue detaining a noncitizen under section 1226(a)."); *Velasco Lopez v. Decker*, 978 F.3d 842, 846 (2d Cir. 2020) (concluding that the district court correctly ordered, for a noncitizen incarcerated pursuant to § 1226(a) for fifteen months, a new bond hearing at which DHS would bear the burden of proof); *J.G. v. Warden, Irwin Cnty. Detention Ctr.*, 501 F. Supp. 3d 1331 (M.D. Ga. 2020).  The Third and Fourth Circuits have articulated the opposite view, albeit in, respectively, dicta or merely vacating a preliminary injunction.  *See Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018) (observing that "Borbot is correct to point out that *Diop [v. ICE*, 656 F.3d 221 (3d Cir. 2011),] places the burden of proof on the government in § 1226(c) cases, whereas under § 1226(a) the burden remains on the detainee at all times.  But we perceive no problem with this distinction."); *see also Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) ("The alien's burden of proof is only to show, by a preponderance of the evidence, that he or she is not a danger to the community or a flight risk. Those procedures, for individuals already in the country unlawfully, do not violate the Constitution's Due Process Clause.").  The Ninth Circuit appears to have sided with the Third and Fourth Circuits, at least with respect to placing any heightened burden (for example, "by clear and convincing evidence") on DHS.  *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1211, 1213 (9th Cir. 2022) ("We are aware of no Supreme Court case placing the burden on the government to justify the continued detention of an alien, much less through an elevated 'clear and convincing' showing. . . .  For the reasons given, § 1226(a)'s procedures satisfy due process, both facially and as applied to Rodriguez Diaz.  In so holding, we do not foreclose all as-applied challenges to § 1226(a)'s procedures.").  Petitioner has not asserted that, given the prolonged nature of his detention, due process required DHS to bear the burden of proof of "flight risk" by a preponderance of the evidence, and the Court therefore does not address whether the Ninth Circuit has left open this type of as-applied challenge to the procedures used in § 1226(a) bond hearings.

ORDER - 6

he is a "flight risk," and this determination involved a mixed question of law and fact that is reviewable in this habeas proceeding for an abuse of discretion.  *See Martinez*, 124 F.4th at 779–80 (citing *Wilkinson v. Garland*, 601 U.S. 209 (2024)).  In reviewing the immigration judge's decision for any abuse of discretion, the Court may consider only whether the immigration judge used the proper legal standards and correctly applied them to the given set of facts; the Court may not reweigh the evidence.  *See id.* at 782–85; *see also Soriano v. Hernandez*, No. 26-cv-900, 2026 WL 969764, at *4 (W.D. Wash. Apr. 10, 2026).

Having carefully reviewed the record in this matter, the Court is persuaded that the immigration judge abused his discretion.  As acknowledged by the immigration judge, petitioner has resided in the United States for over fourteen years, after entering the country as a minor.  Ex. D to Andrade Decl. (docket no. 6-4 at 5).  His mother and two sisters were granted asylum and have applied for lawful permanent resident status.  *Id.*  Petitioner has a ten-year-old child, who is a United States citizen, and he shares custody of the child with his ex-wife.  *Id.*  Prior to his detention, petitioner was employed, and if released, he could reside with his mother and sisters in the Greenwood neighborhood of Seattle.  *Id.*  Petitioner provided to the immigration judge a dozen letters of support from family members (his mother, sisters, and two cousins) and friends, including letters by his ex-wife and both of her parents, who each described him as a devoted father.  *See* Ex. B to Pet. (docket no. 1-3 at 12, 15–16, 21, 26, 30, 32, 34–35, 37–40, 43–44).  As noted by the immigration judge, many of these writers expressed their willingness to sponsor petitioner.  Ex. D to Andrade Decl. (docket no. 6-4 at 5).

ORDER - 7

Petitioner has no history of failing to appear for immigration proceedings, *see* Ex. C to Andrade Decl. (docket no. 6-3 at 4–6), and he successfully completed the requirements for a deferred prosecution, Ex. D to Andrade Decl. (docket no. 6-4 at 6), demonstrating consistent attendance at municipal court hearings and compliance with the mandates of the criminal justice system.  Having done all that was required of him as a result of his January 2023 arrest, petitioner has no criminal conviction.  No suggestion has been made that petitioner resisted apprehension or attempted to flee when approached in July 2025 at his worksite by "special agents" of the Federal Bureau of Investigation, the involvement of which reflects a troubling development in the current administration's approach to immigration enforcement.  *See* Ex. C to Andrade Decl. (docket no. 6-3 at 5).  Rather, the record reflects that petitioner, who has significant ties to the community, including a young son, and a pending matter before the BIA, which would be deemed withdrawn if he were to leave the country, *see* Ex. E to Pet. (docket no. 1-6), has every incentive to participate in future immigration hearings.

In concluding to the contrary, the immigration judge inappropriately considered petitioner's arrests, which never ripened into convictions.  The immigration judge failed to explain how an arrest for assault, as opposed to attempting to elude a pursuing police vehicle, bail jumping, escape, resisting arrest, or the like, constitutes evidence of a "flight risk."  *See* Ex. D to Andrade Decl. (docket no. 6-4).  Although the arrests might have been relevant to dangerousness, the immigration judge did not find that petitioner failed to disprove he is a danger to community safety, thereby revealing a fundamental flaw in the immigration judge's analysis, namely relying on arrests instead of their outcomes,

ORDER - 8

which in petitioner's case show that the prosecutor was not concerned enough in the first matter to timely file charges and petitioner was sufficiently compliant in the second case to avoid prosecution.

In his memorandum in support of his decision, the immigration judge also cited to the denial of petitioner's applications for asylum and withholding of removal, which are on appeal to the BIA, his prior employment without authorization, and his failure to file income tax returns.  The existence of a removal order, even when relief from removal is unlikely, cannot itself demonstrate "flight risk."  *See* *Cruz-Acevedo*, 2026 WL 1623154, at \*8.  The likelihood of not prevailing on appeal from and/or a petition for review of a removal order must be considered in juxtaposition to the circumstances that would keep petitioner from fleeing.  *See* *Soriano*, 2026 WL 969764, at \*5–6.  The immigration judge offered no evaluation of petitioner's likelihood of success, stating only that "the outcome of his appeal is speculative," and no explanation for how the chances of prevailing at the BIA weighed against the undisputed "equities" of petitioner's situation.  *See* Ex. D to Andrade Decl. (docket no. 6-4); *see also* *Cruz-Acevedo*, 2026 WL 1623154, at \*8 ("The Court is left to speculate concerning how the immigration judge viewed the evidence in light of the applicable factors." (quoting *Vasquez-Lopez v. Hernandez*, No. C26-775, 2026 WL 984151, at \*3 (W.D. Wash. Apr. 13, 2026))).

A minimal hope of a favorable result in removal proceedings, an inability to legally work, and a reluctance to file income tax returns are present for most immigration litigants without lawful status and, were they a sufficient basis for continuing to detain noncitizens who are seeking relief from removal, then almost no one would be entitled to

ORDER - 9

release.  See Soriano, 2026 WL 969764, at *5 ("Using the IJ's reasoning, any noncitizen applying for Cancellation of Removal who is unauthorized to work and who truthfully provides information about their employment history and tax return filings automatically is at risk of being found a flight risk.  Again, this is an illogical conclusion . . . .").  The statute enacted by Congress, however, envisions conditional release on bond even for those who cannot work and/or are unlikely to obtain a favorable decision in removal proceedings or on appeal, see 8 U.S.C. §§ 1226(a)(2)&(3), and the role of both the immigration judge and this Court is to enforce the law.

The immigration judge has not done so in this case.  In ruling that petitioner had not "shown that he is not a flight risk" and that "no amount of bail or condition of parole would be sufficient to mitigate the risk of flight in this case," Ex. D to Andrade Decl. (docket no. 6-4 at 6), the immigration judge imposed on petitioner a much higher burden than preponderance of the evidence.  See Cruz-Acevedo, 2026 WL 1623154, at *8 ("It is clear to this Court that the IJ . . . applied an impossibly high burden of proof . . . .").  Applying the relevant factors[5] to the evidence presented at the bond hearing, no reasonable adjudicator could conclude that petitioner failed to prove he was more likely

---

[5] Under BIA precedent, in determining whether a noncitizen is a danger to the community and/or a flight risk, an immigration judge weighs the following nine factors:  (1) the existence of a fixed address in the United States; (2) the length of residence in the United States; (3) family ties and whether they might entitle the noncitizen to reside permanently in the United States in the future; (4) employment history; (5) the record of court appearances; (6) the criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the history of immigration violations; (8) any attempts to flee prosecution or escape from authorities; and (9) the manner of entry to the United States.  Martinez, 124 F.4th at 783 (quoting In re Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006)).

ORDER - 10

than not to appear for future immigration proceedings, particularly if required to post a reasonable amount of bail. *See Garcia Miranda*, 2026 WL 1328227, at *3–4 (ruling that "[n]o reasonable adjudicator could conclude on this record that [the petitioner] poses a flight risk or a danger to the community"); *Soriano*, 2026 WL 969764, at *5–6. The immigration judge abused his discretion in not conditionally releasing petitioner on bond.

**C.     Remedy**

Having concluded that the immigration judge abused his discretion in denying a change in custody status, the question remains whether the proper remedy is requiring petitioner's release or another bond hearing. The Court is persuaded that the appropriate habeas relief is release from custody. When, as here, a noncitizen who is in custody under § 1226(a) has established the absence of "flight risk" by a preponderance of the evidence, no lawful basis for continued detention exists, and the appropriate remedy is immediate release. *See Garcia Miranda*, 2026 WL 1328227, at *5; *Soriano*, 2026 WL 969764, at *6.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1)     The petition for a writ of habeas corpus, docket no. 1, is GRANTED, and within twenty-four (24) hours of the entry of this Order, respondents shall RELEASE petitioner Juan Carlos Fletes-Velasquez from custody at the NWIPC;

(2)     Respondents shall return to petitioner or his attorney any seized personal property, including personal identification documents;

ORDER - 11

(3)     Within forty-eight (48) hours of the entry of this Order, respondents shall file a declaration confirming that petitioner has been released from custody and that any seized personal property has been returned to petitioner or his counsel;

(4)     Respondents shall not re-detain petitioner, or subject petitioner to electronic monitoring, without at least seven (7) days' advance written notice and a pre-deprivation hearing before a neutral decisionmaker unless (a) probable cause exists for believing petitioner has committed or is attempting to commit a criminal offense, or (b) petitioner is subject to an order of removal that is both administratively and judicially final within the meaning of 8 U.S.C. § 1231(a)(1)(B) for purposes of computing the removal period referenced in 8 U.S.C. § 1231(a)(2)(A); and

(5)     The Clerk is directed to enter judgment consistent herewith after the declaration required by Paragraph 3, above, has been filed and to send a copy of this Order and the Judgment to all counsel of record.

IT IS SO ORDERED.

Dated this 29th day of June, 2026.

_____
Thomas S. Zilly
United States District Judge

ORDER - 12